### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RONNIE JOE HILLSBERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 15-cv-211-CVE-TLW |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Ronnie Joe Hillsberry seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **REVERSED AND REMANDED**.

### ISSUES PRESENTED

On appeal, plaintiff raises five issues: (1) that the ALJ failed to order the consultative examinations plaintiff requested and, therefore, failed to develop the record; (2) that the ALJ failed to consider properly the Veterans' Administration's (VA) ruling that plaintiff was disabled; (3) that the ALJ did not assess the mental demands of plaintiff's past relevant work under Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); (4) that the ALJ failed to include all of plaintiff's impairments in his residual functional capacity findings and hypothetical; and (5) that the ALJ's credibility findings are not supported by substantial evidence. (Dkt. 13).

## STANDARD OF REVIEW

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the

steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 63-year old male, applied for Title II benefits on June 22, 2012, alleging a disability onset date of September 15, 2011. (R. 136-39). Plaintiff claimed that he was disabled due to depression, diabetes, and neuropathy. (R. 161). Plaintiff's claims for benefits were denied initially on August 10, 2012, and on reconsideration on December 20, 2012. (R. 63-70, 78-80). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held a hearing on August 8, 2013. (R. 25-55). The ALJ issued a decision on September 13, 2013, denying benefits. (R. 9-24). The Appeals Council denied review, and plaintiff appealed. (R. 1-3; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff was insured through June 30, 2014. (R. 14). Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date of September 15, 2011. Id. The ALJ found that plaintiff has the severe impairment of diabetes mellitus with neuropathy. Id. The ALJ also considered plaintiff's allegation of disability due to depression but found the impairment non-severe. (R. 14-15). The ALJ acknowledged plaintiff's VA medical records, which showed that plaintiff sought treatment for depression beginning in August 2011, was diagnosed with major depressive disorder, and took medication to treat his depression. Id. The ALJ found, however, that the medical evidence did not establish any limitations flowing from the diagnosis of depression. Id. The ALJ cited the treating physician's GAF score and the findings of the agency psychologists who reviewed plaintiff's records to support his finding. Id. The ALJ also assessed the severity of plaintiff's depression using the "paragraph B" criteria. (R. 15-16). The ALJ determined that plaintiff's depression causes no limitation in activities of daily living and only mild limitations in the areas of social functioning and concentration, persistence, or pace, which also supported a finding that plaintiff's depression was not severe. Id. The ALJ concluded that plaintiff's impairments do not meet or medically equal a listing. (R. 15).

The ALJ then reviewed plaintiff's testimony and the medical evidence. Plaintiff testified that he retired because he could not meet the demands of his work. (R. 17). Plaintiff reported activities of daily living that included napping, odd jobs, mowing the lawn, laundry, weekly shopping trips lasting several hours, swimming and walking in a pool, and square dancing once a week for two hours. Id. Plaintiff did clarify that he is on his feet for only thirty minutes during square dancing and that he misses one dance per month "because of psychological problems." Id. Plaintiff usually stands no more than ten minutes at a time and "only moves at a walking pace."

Id. Plaintiff reported that his doctors have advised him to walk, but "[h]e does not have any feeling in his feet and very little feeling in his hands." Id. The ALJ noted that plaintiff began to cry while giving this testimony. Id.

Plaintiff stated that he can sit two hours and stand two hours in an eight-hour workday. Id. In his previous job, he was required to sit 70% of the time. Id. He takes a nap daily, and when he shops with his wife, he takes one break to rest during the three-hour trip. Id. Plaintiff testified that he is angry and "prefers not being around people." Id. Plaintiff also believed that his depression was episodic, but his doctor told him that "he is always depressed." Id.

The ALJ also included a brief discussion of plaintiff's medical records from the VA, which showed treatment for diabetes and neuropathy in mid-2011, which were noted to stem from plaintiff's exposure to Agent Orange. (R. 17). The ALJ cited the VA's disability determination dated May 10, 2012, which found that plaintiff was 50% disabled due to major depressive disorder and 50% disabled due to diabetes, effective September 15, 2011.[1] (R. 18). The ALJ also cited several treatment notes for appointments that occurred after plaintiff began receiving disability payments. Id. In June 2012, plaintiff's feet were normal, except for "a decreased left foot [sic] from a previous injury." Id. In October 2012, plaintiff reported that he was "doing well" and denied feeling depressed. Id.

The ALJ rejected the VA decision, finding that it addressed an issue reserved to the Commissioner. Id. Although the ALJ accepted the diagnoses of diabetes and major depressive disorder, he did "not give much weight to the limitations the physicians with the Veterans Affairs assessed were flowing from these conditions." Id. The ALJ noted that plaintiff's diabetes is "well controlled" with medication. Id.

---

[1] Plaintiff correctly argues that the ALJ's interpretation of the VA determination is flawed. (Dkt. 13). The letter awarding benefits found plaintiff was disabled 100% due to depression and reserved rating his disability due to diabetes pending further information. (R. 224-26).

The ALJ found plaintiff's complaints of severe neuropathy to be less than credible. Id. The ALJ relied on plaintiff's activities of daily living, which included mowing the lawn for an hour at a time, shopping weekly with his wife for three hours at a time, performing household chores, and square dancing once a week. (R. 18-19). The ALJ also relied on plaintiff's limited treatment history as another factor reducing his credibility. (R. 19). Plaintiff's good work history bolstered his credibility, but it was not enough to outweigh the inconsistencies between plaintiff's complaints and his physical capabilities. Id.

The ALJ concluded that plaintiff retained the residual functional capacity to perform light work. (R. 16). With this residual functional capacity, plaintiff was able to return to his past relevant work as a drafting CAD operator. (R. 19). Alternatively, the ALJ found that, with plaintiff's transferable skills, he could also perform sedentary work doing data entry, a semi-skilled job. (R. 20-21). Accordingly, the ALJ determined that plaintiff was not disabled. (R. 21).

## ANALYSIS

On appeal, plaintiff raises five issues: (1) that the ALJ failed to order the consultative examinations plaintiff requested and, therefore, failed to develop the record; (2) that the ALJ failed to consider properly the VA's ruling that plaintiff was disabled; (3) that the ALJ did not assess the mental demands of plaintiff's past relevant work under Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); (4) that the ALJ failed to include all of plaintiff's impairments in his residual functional capacity findings and hypothetical; and (5) that the ALJ's credibility findings are not supported by substantial evidence. (Dkt. 13).

### Duty to Develop the Record – Consultative Examinations

Plaintiff's argument is twofold: first, the ALJ erred by failing to rule on plaintiff's request to order consultative examinations; and second, the failure to order consultative examinations

6

was a failure to develop the record because without consultative examinations the record contains insufficient evidence to assess the impact of plaintiff's severe impairments and fails to contain any residual functional capacity forms upon which the ALJ could have relied. Id. The Commissioner argues that consultative examinations were not necessary because the ALJ had sufficient evidence upon which to render a decision. (Dkt. 16).

The Tenth Circuit does not require an ALJ to rule on a request for a consultative examination. See Harlan v. Astrue, 510 F. App'x. 708, 712 (10th Cir. 2013) (unpublished).[2] Rather, the decision to order a consultative examination depends on the facts of the case. See id. Accordingly, "the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing." Id. See also Lundgren v. Colvin, 512 F. App'x. 875, 878-79 (10th Cir. 2013) (noting the ruling in Harlan and reiterating its statement that the appropriate inquiry is whether the record was sufficiently developed). Thus, the ALJ did not err by failing to make a formal ruling on plaintiff's request for consultative examinations and the issue for the court is whether the ALJ failed to sufficiently develop the record when he did not order the requested consultative examinations.

With respect to this question, the ALJ has "broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.2d 1162, 1166 (10th Cir. 1997). Nonetheless, Hawkins, citing the applicable regulations and other case law, holds that, despite the ALJ's discretion, a consultative examination must be ordered in three instances:

"where there is a direct conflict in the medical evidence requiring resolution;"

---

[2] Although Harlan is unpublished, it may be cited for its persuasive value, and the undersigned has found no Tenth Circuit authority that contradicts its guidance on this issue. See 10th Cir. R. 32.1.

>"where the medical evidence in the record is inconclusive;" or

>"where additional tests are required to explain a diagnosis already contained in the record."

Id. (citations omitted). Hawkins notes that "[t]he difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." Id. at 1167. In that situation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id.

In this case, the administrative record demonstrates that none of these situations applies. The administrative transcript documents plaintiff's course of treatment for the period between September 2010 and June 2013 – encompassing the year prior to plaintiff's alleged disability onset date and two years of treatment after the alleged onset date – and contain extensive notes documenting plaintiff's diabetes and depression. (R. 227-304, 318-95, 398-432). Plaintiff cites no conflicts in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation. (Dkt. 13). Plaintiff contends that the record does not include testing to assess the severity of his mental impairments, nerve damage, diabetes-related fatigue, and back pain. Id. In this regard, the medical record is not deficient. Additionally, any questions raised about the severity of plaintiff's impairments are related to plaintiff's own inconsistent statements, which the ALJ addressed in his credibility analysis, and the VA's disability determination, discussed *infra*, and not to any deficiencies in the medical records.

## VA Disability Finding

Plaintiff argues that the ALJ did not properly consider the VA's 100% disability rating for depression or the VA's other disability ratings for plaintiff's nerve damage and hypertension. Id. Plaintiff acknowledges that the Commissioner is not bound by the disability finding of

another administrative agency but argues that the ALJ committed reversible error when he did not "adequately explain why he did not find the VA's disability ratings and underlying evidence persuasive." Id. The Commissioner argues that the ALJ discussed the VA's disability finding and gave reasons for rejecting it. (Dkt. 16).

The ALJ found that plaintiff's depression was a non-severe impairment because it did not impose more than "minimal limitation." (R. 15). The ALJ discussed plaintiff's depression-related treatment records, which indicated that plaintiff complained of depression caused by his diabetes diagnosis. (R. 14). Examinations showed a high level of functioning, but plaintiff was diagnosed with major depressive disorder and prescribed medication. Id. The ALJ then relied on the opinions of two non-examining agency psychologists, who opined that plaintiff's depression was non-severe because it caused no limitation in plaintiff's activities of daily living and only mild limitations in plaintiff's social functioning and concentration, persistence, or pace. (R. 15-16).

In assessing plaintiff's residual functional capacity, the ALJ discussed the VA disability rating. (R. 18). Specifically, the ALJ cited the VA's May 2012 letter, which, according to the ALJ, established plaintiff's "overall or combined rating of disability to be 80% and the claimant would be paid at the 100% rate effective September 15, 2011. It was determined that the claimant was 50% disabled because of major depressive disorder, and 50% because of diabetes mellitus making the claimant unemployable." Id. The ALJ then discussed two medical treatment notes, one dated June 2012, which indicated a normal diabetes foot examination, and one dated October 2012, in which plaintiff self-reported that he was not experiencing depression. Id. The ALJ stated that the VA's disability determination addressed an issue reserved to the Commissioner and, therefore, could not be given controlling weight. Id. The ALJ determined that he "accepts the diagnosis of major depressive disorder and diabetes mellitus, but does not

give much weight to the limitations the physicians with the Veterans Affairs assessed were flowing from these conditions." Id. This analysis was the only consideration that the ALJ gave to the VA decision.

Plaintiff correctly points out that the ALJ misstates the facts regarding the VA decision. The VA awarded benefits to plaintiff effective September 15, 2011, "the day following your last date of employment." (R. 224-26). Plaintiff had previously received a 50% disabled rating due to his depression,[3] but the VA increased that rating to 100% effective October 5, 2011, thereby finding plaintiff's impairments to be "permanent and totally disabling." (R. 225, 226). Notably, as part of the benefit payable, the VA "granted entitlement to special monthly compensation effective October 5, 2011 because you are housebound." (R. 225). Contrary to the ALJ's finding that plaintiff's diabetes contributed to the VA's determination, the VA actually deferred ruling on rating plaintiff's diabetes. (R. 226).

The regulations require an ALJ to "consider" specific categories of evidence, including "Decisions by any governmental or nongovernmental agency about whether you are disabled or blind." 20 C.F.R. § 404.1512(a)(5). Such decisions are not binding on the Commissioner. See 20 C.F.R. § 404.1504. Although the regulations state that the ALJ must *consider* outside administrative rulings on disability, the Tenth Circuit has interpreted this regulation to require the ALJ to *discuss* any decision from another agency regarding a claimant's disability. See Grogan, 399 F.3d at 1262-63.

In Grogan, the ALJ failed to discuss a VA disability finding that the claimant was 100% temporarily disabled for a month and a half and 60% permanently disabled thereafter due to a "slipped vertebra." Id. at 1263. The claimant became temporarily disabled, according to the VA

---

[3] The documentation establishing the 50% disability rating is not in the record.

decision, during the last days of his insured period with the Social Security Administration. See id. The ALJ ultimately determined that plaintiff's "slipped vertebra," his only injury, was not a severe impairment and denied benefits at step two. See id. The district court found no error, but the Tenth Circuit reversed, holding that the ALJ was required to explain his reasons for finding no severe impairment at step two (and finding plaintiff not disabled as a result) when the VA had found plaintiff temporarily totally disabled and permanently partially disabled as a result of that same impairment. See id.

In Kanelakos v. Astrue, 249 F. App'x 6, 8 (10th Cir. 2007) (unpublished), the Tenth Circuit reviewed a case with facts similar to the instant case. There, the ALJ mentioned that the claimant had a partial disability rating due to mental impairments and noted that the standards for disability differed between the VA and the Social Security Administration. See id. However, the ALJ did not discuss his reasons for rejecting the VA's analysis of the medical evidence and went on to find that plaintiff's mental impairments did not qualify as severe impairments at step two. See id. The Tenth Circuit reversed, finding that the ALJ's "fundamental Grogan error is compounded" by the step two finding because the burden at step two is *de minimis*. Id.

In this case, as in both Grogan and Kanelakos, the ALJ found that the basis for the VA disability rating did not warrant a finding of a severe impairment at step two. The language in Kanelakos, in particular, highlights the importance that the Tenth Circuit places on an ALJ's reasons for rejecting another agency's disability finding, particularly when the ALJ concludes that the basis for the other agency's disability rating does not meet the minimal requirements for a positive finding at step two.

The ALJ found at step two that plaintiff's depression was not a severe impairment, based largely on the opinions of non-examining agency psychologists. (R. 14-15). Despite the 100%

11

VA disability rating in the record, the ALJ did not discuss the VA disability finding in rating the severity of plaintiff's depression. Id. Instead, the ALJ reserved any mention of the VA disability rating until step four. (R. 18). At step four, the ALJ misstated the evidence; the VA's disability determination actually found plaintiff disabled solely on the basis of his depression. (R. 225). The VA also found that plaintiff was "housebound," which conflicts with the ALJ's findings at step two that plaintiff has no restrictions in activities of daily living and only mild limitations in the area of social functioning. Id. The ALJ further stated at step four that he "accepts the diagnosis of major depressive disorder and diabetes mellitus, but does not give much weight to the limitations the physicians with the Veterans Affairs assessed were flowing from these conditions." Id. However, the ALJ did not explain what those limitations were, which ones he did not accept, or his reasons for rejecting the VA physician's findings. The ALJ also discounted the VA disability rating because it constitutes an administrative finding on the ultimate issue of disability, and such opinions are never entitled to controlling weight.

The ALJ's misreading of the evidence, conflicting findings, and cursory discussion of the VA disability rating result in a discussion of the VA finding that fails to meet the requirements of Grogan and Kanelakos. The ALJ did not satisfy his duty to explain his reasons for rejecting the VA disability determination.

The Commissioner argues that the ALJ satisfied his burden merely by stating the weight that he gave to the VA's determination. (Dkt. 16). The Commissioner then argues that the evidence supports the ALJ's residual functional capacity finding that plaintiff can perform light and sedentary work, relying on both the ALJ's findings and, without explicitly stating so, the principle of harmless error. Id. The Commissioner notes the ALJ relied on a high GAF score and the opinions of the non-examining agency psychologists. Id. However, the Commissioner also

12

argues that the ALJ's findings are supported by the fact that plaintiff was rated as 80% disabled while he was working full-time. Id. The Commissioner further argues that "the VA's rating here seems divorced from Plaintiff's actual functioning, which is unsurprising given how [VA disability ratings] are calculated." Id. at 8, n.8. While this analysis appears sufficient to support the ALJ's conclusion that plaintiff's mental impairments impose no limitation, the ALJ did not raise these points in his decision denying benefits; therefore, these arguments constitute post-hoc rationalizations. The undersigned cannot find any case in which the Tenth Circuit has considered the failure to explain the reasons for rejecting another agency's disability determination to be harmless error.[4] To the contrary, the Grogan decision specifically prohibits the use of post-hoc rationalizations to support an ALJ's failure to properly discuss another disability determination. See Grogan, 399 F.3d at 1263.

For these reasons, the undersigned recommends that the District Court reverse and remand for further proceedings.

**Remaining Points of Error**

Because the ALJ's review of the VA's disability determination on remand could impact the ALJ's step four and step five findings, the undersigned does not reach the remaining points of error.

---

[4] If the harmless error analysis was applicable, the undersigned would recommend affirming the ALJ's finding that plaintiff's depression was a non-severe impairment. Although plaintiff was diagnosed with major depressive disorder, the medical records do not reflect any symptoms that limited plaintiff's ability to function. Plaintiff also reported no depressive symptoms, other than poor sleep, and his self-reported activities of daily living include weekly shopping trips and square dancing at least twice a month. This evidence clearly conflicts with the VA's finding that plaintiff is housebound, and the VA's decision does not include any references to the treatment notes or other evidence that would support a conclusion that plaintiff is housebound.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED AND REMANDED** for further proceedings. On remand, the ALJ should explain his reasons for the weight he gives to the VA's disability determination. Additionally, although the record is sufficient in this case to make a final determination, the ALJ is free to reassess his findings and, if necessary, to order a consultative examination.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by July 12, 2016.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 28th day of June, 2016.

_____
T. Lane Wilson
United States Magistrate Judge

15